Oral argument not to exceed 15 minutes per side, Mr. Carney for the appellants. Good afternoon. May it please the Court, I'm Stephen Carney for the State of Ohio and its Secretary of State. I'd like to reserve five minutes for rebuttal. Requiring voters to write down their addresses and birthdates is not an unconstitutional burden on the right to vote, nor does it violate the Voting Rights Act. For three reasons, the Court should reverse the District Court. First, Ohio's laws satisfy the Anderson-Burdick balancing test because they impose minimal burdens if any on the right to vote, and they're justified by legitimate state interests. Second, the Voting Rights Act claim fails on the law because Ohio's voting system is equally open to all regardless of race, and the challenged laws do not cause any disparate impact by race. And third, these claims are procedurally barred, mostly because the Ohio Democratic Party lost on identical claims in its other case and on other grounds as well. I'd like to start by explaining why Ohio passed these laws and how they actually promote having more votes count, both in the short run and the long run. There are three sets of laws at issue here. The so-called five-fields law are the information requirements, which require name, signature, address, birthdate, and form of ID to be listed on absentee and provisional ballots, and also the cure period and also the assistance law. The five-fields law was promoted by a bipartisan group, the Ohio Association of Elected Officials, to try to get more votes counted, because the way it works is they use these databases and they try to find the voter who's voting a provisional ballot. I'll focus on those first. And if they just have a name, sometimes they couldn't find the person. People have changed their names. People have moved, so they're not in the same place anymore. They might have moved from Cleveland to Cincinnati. They might be newlyweds. There might be a junior and a senior in the same house with the same name. So there were votes being lost, and they said, you know, these fields that are on here are only optional now. And so the legislature made them mandatory, and that's actually nudging people so they fill out this info so we find and capture more votes. And there are several elections officials that talked about that, but one of the best was Ken Terry, who is an Allen County member of the board, or I'm sorry, not member of the board, the director and before that, deputy director of the Board of Elections. He's a Democrat, and he talked about how the small and large counties work together in a bipartisan way to come up with these to capture more votes. And the other thing they were trying to do is to nudge people to use this form by getting the address information in there so that they'd register for next time. And that's been a great success. If I register for next time, these must be people who in fact are rejected because they're not registered. Right. And that's important because that's the number one reason. I don't want to do too much data crunching and play accountant, but in the last general election, 2014, there were about 4,700 total provisional votes rejected. Now that's out of 5.6 million total votes cast, about 49,000 provisional ballots cast. We accepted over 90%, but of the 4,700 we rejected, well over half, 2,600 were for not being registered. Another 1,200 for being in the wrong place, a few other things. The only ones affected by this law, 59 for wrong birthday and 188 for wrong address. So only about a little over 240, 247 I think. And the reason that's important is we want to capture every one of those and certainly don't want to denigrate a single lost vote that we could have validated. But when you compare, not only did we drive up the numbers and get our percentage of provisionals accepted over 90% last time, that was a record for us. We're one of only five states in the nation that achieved that 90% number, but if you look at the 2,600, if only half of those are nudged by this rule, 1,300, and only half of those actually come out and vote again, 650, that more than outweighs the 200 odd that are lost. So we're nudging people to get registered. One thing I don't understand about that argument is that it's comparing something that was on the back of the form before and there was nothing that said you must fill this out or you need to fill this out. But I'm not sure why the relevant comparison wouldn't be to having it on the front of the form with instructions, fill out these five, and maybe even at the bottom saying if you don't, you may not be counted. That's a lot different from saying when you actually know that this person is registered and you can tell from the face of it that there's an imperfect alliance, we're not going to allow it. Right? Three answers, Your Honor. First, as this Court said in Ohio Council 8 just this year, things that have minimal burdens like these do defer to legislative judgment and akin to rational basis tests. So the legislature could judge that being required in your question you just said and right at the bottom, or these won't be counted. But under the district court's order, we couldn't put language like that because it wouldn't be required. They may not necessarily be counted if they're not. That language would actually be not true under this court's order because the court's order says count them anyway, even if they're missing these fields. So we couldn't tell people you're risking that. You're talking about whether maybe this court's order was right. You're saying is the district court's order correct? I'm asking whether it's rational what the state is required when the state is required that a valid ballot, a ballot by a person who is properly registered gets thrown out for non-perfect compliance. That seems like it might not meet the rational basis test and if that's true, then if the reasoning is such that I'm asking about, the state could then... Well it's still the case, Your Honor, that as Mr. Terry and others represented and explained that it's not just about registration for the future, ensuring that this person is the right person because of people who have moved. It's the same thing if you had a rule which said if you can tell that it's the right person even though they got the birthday wrong, you have to vote. Whereas now as I understand the rule, you can correct me if I'm wrong. If they can tell it's the right person, they got the right Social Security number, the right address, they inverted their birthday and all the other evidence shows conclusively that this is the right person, they may not allow him to vote. Is that correct? That's the way they describe it in the brief. The ultimate judgment though is the legislative judgment that when you tell people it's mandatory, they're more likely to do it because when we had it optional before, we weren't getting these numbers. But the other thing is, not just registration for next time, without those fields... The comparison you're making about these numbers has to do with a system that is in the other direction. I mean it's not the system I'm asking about. You could have a system, I just don't understand why it's necessary to require perfect compliance when you know that the person has already registered. That's what they say repeatedly in their briefs. It doesn't really answer that to say, well, when we went from something that wasn't like that to what we have now, it improved. That doesn't mean that what we have now is rational. Well, Your Honor, there were people even with an, for example, like the absentee envelope or it's not a front back issue like the provisional, there are people that just skip these fields and just like when you see on a website, field required, more people respond. Several people said people respond to having it be required. But that's the kind of reasonable legislative judgment that this court referred to in Ohio Council 8 as we defer. Does requiring it nudge more people along? Sure. I want to briefly mention, if I may though, on the Voting Rights Act claim that one of the most important pages in the court's opinion, page 41, which is 33838, the page ID, where the district judge says he acknowledged that the expert, taking all of their facts as true even, their expert did not disagree that overall African-American voters both vote and register turnout at the same rate as everyone else at the macro level. And even as to these laws, they didn't find that these laws caused any problem, any racial disparate gap, even aside from the benchmark problems and the causation problems. What he found was only that, he said, the overall rate of provisional ballots being rejected before these laws was slightly greater for counties that have more African-Americans, so from that he inferred. And the problem with that is if you had a- Now you're in the Voting Rights Act part of the case? Is that because you're talking about- Yes. And an under section- I'm still talking about rational basis. Okay. Sorry, Your Honor. I wanted to try to get both in. But he found that there was no effect. No, I mean, that's fair. But I'm a little, you know, I'm slow. So- If you're just talking about rational basis, I'm still having a little trouble seeing the rational basis for not counting a vote that is clear on its face as somebody who has registered. It's not somebody who left out a required field. It's just the required field was entered in incorrectly. It said Catherine Street instead of St. Catherine Street or something like that. That's- Right. If I'm understanding the briefs, that that person's vote would not be counted. It comes down- It's hard for me to see what the rational, maybe there is a rational basis. It comes down to the legislative judgment that when you use required and when you actually do require it, that that nudges more people into compliance. Even if you said required, I mean, you can say required entry. That doesn't mean you have to enforce it by denying their vote. Well, that's not honest. Required for what? If there's no effect. Unless at a minimum, you'd have to modify the court's order. At a minimum, you'd have to modify, because right now, it says count everything, so we can't be dishonest with people and tell them, you have to do this, but if you don't, nothing happens. I guess what I'm asking is, would a modification rather than a reversal make more sense? It'd be better than full affirmance, but- And alleviate the concern that this is irrational. No, because, Your Honor, as Mr. Terry and others explained, if anybody misses these, it's not just a matter about registration for the future. Often we can't find them. Mr. Terry said there were six Stephen Millers in Allen County. I'm not hypothesizing where you know. I mean, they say where you know that this is the right person. Right. And I guess the trade- If you don't know, then no one would say that was irrational. The trade-off is that we want to find more people where we do know, and this nudges people, and it's been working. Our numbers have gone up. We're getting more accepted. I'd like to reserve my time for rebuttal, but want to briefly say that the Ohio Democratic Party tried and lost these same claims, and they are precluded, and that does extend to their co-parties for the reasons in the brief. I'm sorry. Are you talking about the case that was vacated by the Supreme Court, or is it a different case? No. I'm talking about a case where they had a trial in November on these identical claims lost in a decision a few weeks before the decision in this case. They chose not to cross-appeal. We expected them to. They didn't, and so they're barred. And if I may- The case that was argued on Monday. Tuesday. Yes. It was just argued. But they only appealed, or we appealed part- It's a party, though, right? Yes. And it extends to the others, because under this Court's Amos test, anyone who has the same incentive and a representative capacity- They don't have to be in reprivity, or that's saying they are in privity? No. In Amos, they said, even if you're a non-party and not in privity, that if you have the same interest, that we will hold it against you. That's Taylor v. Sturgill from the U.S. Supreme Court, and this Court's Amos. And the ODP, the Ohio Democratic Party, had the same interest that NEAC did in getting these ballots counted. Even if they come at it from different angles, they had the same root interest. And we think that bars it, but if I may, I'll save it for rebuttal. Okay. Good afternoon, Your Honors, and may it please the Court. Judge Keith, can you hear me? Yes, I can. Thank you very much. Okay. Thank you. Your Honors, with respect to the contested statutes, there is overwhelming, uncontested evidence in the record of this case that similarly situated voters are being treated differently across Ohio's counties, and even within certain counties, regarding whether their votes will be counted. And the same people, depending on where you live, will be disenfranchised in one set of counties, or their votes will be counted. Is that because of the statute, or is that because of questions you've raised about how the boards of election treat things? It's both, Your Honor. It's both, and it also involves the passivity of the Secretary of State in his failure to implement the statute fairly. And here's why I say both. Because as Defendant Husted, through his representative, admitted in his trial testimony, once you introduce the five fields, you introduce a huge number of permutations of potential trivial errors that can occur. For an address alone, for example, somebody could get the street number wrong, somebody could not write the street, somebody could write everything correctly, but leave off the zip code. Is the other side correct? And frankly, I had looked at the same numbers. The number of actual rejections on addresses was like 188 for provisionals in 2014, and 1,000 out of nearly a million on absentees. Is that right? I don't have the numbers at hand, Your Honor, but I know that they are documented in Plaintiffs' Exhibits 17 through 20. That's where I took those from. And the total for all of the errors would be about 4,100 in those very low turnout elections across the five fields. The low turnout elections for 2014 and 2015. Are we talking both absentees and provisionals? Correct. Because, at least when I looked at it, for example, failure to provide any ID or failure to provide any signature, those you're not challenging. We do not contest the signature requirement. We don't contest not writing down the ID. All that I saw was missing or incorrect date of birth, failure to provide current address for the provisionals, and the same thing, plus there's a column of address does not match voter record, and I didn't come up with anything like 4,000 for 2014. Is that where you're taking that number from? 4,100 comes across both the general elections for 2014 and 2015 when you aggregate them. And I want to hasten to add with respect to the ID, I want to hasten to add that we believe that if somebody makes a minor error there, and again, our entire argument rests upon the testimony from the board staff who said, we can identify most of these folks. We don't have a problem with it. And if we can identify them, we want to be able to count the vote. Even the defendant's own witnesses, Ward and Terry, who my colleague was talking about, they said the OAEO never wanted disenfranchisement. That was not a part of what they were asking for from the General Assembly. So suggesting that the OAEO is somehow responsible and blessing this just is belied by the record. And in fact, both Ward and Terry and just about every other board witness testified they don't want to disenfranchise these voters. They know who they are. They think it's wrong and they characterized it as unfair. In terms of the people whose ballots are rejected, I did not see any evidence about the, any statistical evidence on the composition of those people. When I looked at it, they're in various counties, they're in quite small numbers, and I didn't see anything that tried to tease out those numbers. Am I right? Well, there is evidence in the record on that. It's not direct evidence, however. It's circumstantial evidence, it's expert evidence, but then it's also the evidence, this is uncontested, that if you look, for example, let's use the example of zip code. If you have a missing zip code on the form, the largest counties that have the largest minority populations and percentages, Cuyahoga County, Hamilton County, Franklin County, those big counties, they will not count your vote if you left the zip code off, even though they know who you are, even though they can even verify from the rest of your address. But smaller, almost exclusively white rural counties, such as Meigs County, Allen County, Wyandotte, Fayette, Carroll, those counties will count your vote. So you have this disparate impact by race occurring, and in addition to that, you have the expert testimony that looks at the social and demographic factors and projects it to the population by race. Those are statements about what boards say they will do, not what we have any data as to what they actually did do. No, incorrect, respectfully, Your Honor. Actually, if you, and one of the things that's a little confusing about the record is to compress the trial, a lot of the depositions that were taken in the case by stipulation were entered as trial depositions. So if you look at those depositions and you look at the ballots we were going over with the representatives of the boards, they were admitting to what they were doing, not just what they say they'll do in the future. I'm looking at the charts of how many were rejected in counties, and I didn't see anything that in fact addressed that. The reason that you don't see that is that what happened was we had to examine all of the ballots. So for example, let's use a small county like Meigs. We had to look at all of the ballots, including the ones that were counted, and then we had to try to identify where there was an error that was ignored. And so that wouldn't show up in those statistics in those charts, A through H. So then we asked them questions in the depositions in a trial. Why did you count this? You know, here's an error here, and they say, well, we count those. And then they express their policy, and then they express what they were actually doing. And this actually leads to a really important point, which is the remedy, it seems, that is suggested by the state here is, well, let's just disenfranchise more people irrationally. Let's just disenfranchise more people where we have no doubt as to their eligibility. Let's make it equal. Well, first of all, the Secretary of State has done nothing to create equal disenfranchisement across the state, despite this case pending for two years, and despite the evidence that's been in the record for months and months. But putting that aside, that would be an unenforceable remedy, because you wouldn't be able to, outside of the context of really expensive litigation where you can get discovery of these ballot forms that are otherwise not available to the public, there would be no way to monitor and see whether counties like Meigs were actually looking the other way and counting ballots. There's no way to do it, because they're not reporting that on the forms. In terms of the, the counties had to make similar types of decisions about whether to count things or not under the other fields as well, though they did they not in previous times. So that's where we can compare rejection rates and reason for rejections from earlier elections. I don't think you can do that. I don't think those are valid bases for comparison, because until Senate Bills 205 and 216, there wasn't this mandate that ballots be... In terms of disparities between counties, because a lot of what you were just saying is well, they'll do one thing in Meigs County, they'll do a different thing in Franklin County. Those sort of things occurred as well in terms of how good ID was, how good the name was, whether the name matches, and if anything, doesn't a requirement for quote perfection at least create a standard? Now you can argue that they may or may not meet it, but of course that's why you have challenges at the counting level. If the standard is perfection, then when you come to an election case, then you challenge what the board actually did. If you have no standard, then they can do whatever you want, and it's harder to challenge. If I understand you correctly, Your Honor, if you're still talking about the ability to compare from election to election, I think that is highly misleading, and there's case law on this. I believe the Fourth Circuit... I doubt it. I didn't mean numbers from election to election. Okay. I was saying that the... We go back to Bush versus Gore, and one of the arguments was that there wasn't a standard, and the standard here is completeness and perfection. I'm sorry, Judge Keith. Did you have a question? Yes. Thank you, Judge Boggs. You're talking about the standard. What standard of review applies to the district court's analysis of the Senate factors? Your Honor, if I understood your question, Judge Keith, you were asking the standard of review that applies to the application of the Senate factors. The district court's findings with respect to the Senate factors, the jingles factors, are entitled to deference. That fact finding is entitled to deference, absent clear error. I don't even think we've heard an argument about... I don't even think those are contested facts at this point. We've certainly not seen arguments about that, so that's subject to a clear error review. Then, of course, the application of those factors we don't contest would be subject to de novo review. Now, that does lead to the issue then, because I don't want us to lose sight of the different claims here. We've got the Anderson verdict test. I think Judge Rogers did essentially what I would have done in terms of stating that it's fundamentally irrational to have as the result disenfranchisement. We do not, and it is misleading in the briefs to suggest that plaintiffs are somehow saying, get rid of the five fields. We're not saying that. We're just saying, don't disenfranchise voters you might otherwise be able to determine are eligible, and the uncontested record in this case shows. I don't mean to interrupt your summary, but you sort of answered really in a more direct way than your opposing counsel with the question by pointing out that there's differences from county to county. There's a rational argument that if you're going to disqualify some votes, you ought to have a standard that's pretty clear, and that if you just say, we may not, if the form says this is a required field and it may affect whether we're able to allow you to vote, that that gives greater discretion rather than less discretion to the various sports. Why isn't that a ... I'm now just talking about Anderson verdict and assuming that it's minimal and only gets rational basis review, which I understand you challenge, but why wouldn't that meet rational basis? Well, the fact that you just articulated, Judge, actually falls into two buckets, if you will, of our claims, or three buckets. First of all, with respect to ... I'm sorry? I'm just joking. Go ahead. I'm sorry. With respect to Anderson verdict, what it shows is that the interest that's being articulated, that we want uniformity, that the Secretary of State and the defendants, they worship at the altar of uniformity, that that's just not true. They have tolerated non-uniformity, and non-uniformity is what's occurring. With respect, the difficulty I have with that, it seems to be attacking a statute on the grounds that it hasn't been properly implemented. I mean, that's not logically a basis for challenging the statute. Then you shouldn't sue or take steps to enforce it properly. It is, Your Honor, it is a logical basis, because this is an as-applied challenge, which is another thing that was said repeatedly in the briefs that isn't correct, that this is only a facial challenge. That's just not true. This is an as-applied challenge. What we are contending is ... The relief is across the board, though, right? Well, the district court ... This is Judge Keith. The district court found ... This is a 12-day bench trial, I think. The district court found that the challenge regulations have a disparate impact on African-Americans. Now, number one, he said, African-Americans were hindered from participating in political process. Two, Ohio has a history of racial discrimination in terms of voting laws. Three, racially polarized voting in Ohio is extensive. There are racialized appeals in politics. African-Americans are not represented well in the most important and visible elected statewide polls. And there is a lack of responsiveness to particularized needs of American voters. And these are the things that the district court, after a 12-day trial, made his finding. Now, whether the electoral law practice or structure interacts with social and historical conditions becomes an inequality of opportunities by the blacks and whites. And so, I think after a 12-day trial, bench trial, can we say, counsel, that these findings of fact of the trial judge are factually erroneous? I would agree that they're not. And Your Honor, I believe, Judge Keith, that I don't even think we're really hearing that argument being forcefully made by the defense here at this point. But to combine my answer with what Judge Rogers asked and with what you just asked, is that this disparate impact, which goes beyond what you just said, Judge Keith, it also goes to the fact that the smaller, white, rural counties aren't enforcing the law and the big ones with the large minority populations are. That fact should not be missed. That comes into play in the Equal Protection Clause, our Bush v. Gore claim. That comes into play into showing that the interest is not a real interest in the Anderson Burdick claim. That comes into play in showing that this is fundamentally unfair, our substantive due process claim. Your Honor, just to be clear, your reliance there, am I correct, is on the testimony of the certain county officials as opposed to an analysis of the rejection numbers? No, it's both. It's both. Because where do you have the analysis of the rejection numbers? Not of the use of the ballots, but of the rejection numbers. So the rejection numbers, combined with the ballots that were accepted, those are questions that were asked of and directed to all of the board officials. Why did you do this? We had actual ballots from the general elections of 2014 and 2015, and we were asking them questions about those ballots. Why did you count this? Why didn't you count that? We were, of course, in that process, not trying to tip them off as to what other people are getting completely different answers as to not only what they would do in the future and what they were stating their policies are, but what they had done. What ballots they would count and what ballots they would not count. Who they would disenfranchise, who they wouldn't disenfranchise. This fact of disparate impact across the state, correlated by race, which the Secretary of State has done nothing to correct, also comes into play in the intentional discrimination claim, which we were asking this court to reverse as well. Now, I want to be very clear about this because I think it could be misunderstood, and I thought I heard a question that might have been framed this way. We are challenging both the adoption of the statute by the General Assembly, but also its implementation under the intentional discrimination claim that we're pursuing, as well as every other claim. It's an as-applied challenge. What remedy would you seek for your rejected claims as opposed to what you already got from your accepted claims? So Your Honor, you are correct, perhaps, in surmising that for many of those, they may be superfluous if, in fact, the court affirms on the accepted claims. But the one claim that will then provide an additional remedy is the intentional discrimination claim. If the court, for example, decides to remand it for proper application of the law by the district court to its own fact-finding and the undisputed aspects of the record. In that instance, if we have a success on that claim, the additional remedy under Section 3 of the Voting Rights Act is that we can ask that Ohio be put into preclearance so that all of these problems this court and other federal courts have dealt with with Ohio, starting from the Boustany case onward, discriminating against naturalized American citizens, declared unconstitutional, Obama for America, NAACP, it stops, it grinds to kind of thing. Ohio has to ask permission from the Justice Department. Okay. Are your fellow counselors going to argue now? Sorry. You take the whole time. I had him on my list, so I... Yeah. I did take the time, but Your Honor, if you would like a response on the race judicata issue preclusion issues, I can respond to that, or if you have specific questions for ODP, we can do that. It's entirely up to you. I did not. Judge Keyes, did you want to hear any more on that? Not necessarily, yes. Thank you very much. I know it's been difficult with me being over here in Detroit, but I appreciate Judge Boggs allowing me to participate in this very important case. Oh, you're certainly entitled. It's not my allowance. Thank you, counsel. Thank you, Your Honor. Do you have a rebuttal? Thank you, Your Honor. I'd like to, as quickly as I can, cover the legal errors on rational basis application, the legal errors about the Voting Rights Act, and also correct the record about the Ohio Association of Election Officials' support for making things mandatory. Briefly, the rational basis test, as a legal matter, the court in Crawford said that you look at all voters, not a subset. And this really is facial, because not only the relief here is facial, but there's no way to do an as-applied. They don't say, relieve these things as-applied to the homeless or as-applied to some group. It's like saying, the speed limit is only enjoined, not facially, but only as-applied to speeders. Well, that's everybody. It doesn't matter for people who are keeping the limit. If everybody gets a break under this order and doesn't have to comply with the law so we can't find them in the database and we can't promote registration for the future, that is facial relief. I've not heard any explanation of how as-applied relief. Different facial relief for everyone, maybe, has been suggested. But this is a facial challenge, and the court looks at how it affects all voters. In fact, the court in New York in 2012 pointed out that in 2011, over 500 votes had been thrown out on signature and affirmation basis, and they said that didn't create an Anderson verdict burden, because one, it was so simple to comply, and the court looked at just that, and two, that the state had legitimate interest in making sure people were who they said they were. Which case were you citing to? New York. The Northeast Ohio Coalition for the Homeless in 2012, and then further, a few weeks later, the court in SEIU, which was somewhat related at the time, said that voting in the wrong place, even though that throws out 1,000 votes, that because it's so simple for voters to comply, the burden is so low that it's reasonable for the legislature to figure out how to do this, and that's what the rational basis test and the way this court applied it in Ohio Council 8 says. Also, I want to keep in mind, on the support for the idea that this is mandatory, the OAE O, this proves it. They originally suggested a basket that just had a straight birthday requirement. Some people pushed back and said, well, what if, you know, people get the year wrong, and they said, oh, you know what, and then this exception was written into the law based on some back and forth with the legislature, an exception that says, you can get the year wrong, just get month and date, an exception that says, and even if you get the month and date wrong, if three of the four board members agree that we can otherwise identify you based on other fields, they can still count it. Now, the great thing about that exception is not only does it show flexibility in the legislature and not some just come down with a mandate where we didn't listen to anyone, but it also shows... Is that still in the statute? Yes, it is. And the OAEO continued to support the law with this exception, and the very fact that there's an exception that allows it to be counted shows they understood the premise that the basic rule... How does that interact with this discussion about, you absolutely know who they are, but you still won't count their vote? Is what you're saying that, what, is it just on the date of birth that the county board can count it if, in fact, they can identify them? Right. There are two things about county differences. First... Three things, really. First, in some cases, things that look similar are very different, because you could have one, two, three grand, and someone doesn't write street or avenue, and maybe there's only one grand in Pomeroy and Meigs County, but they're more in Cleveland. But also, things like junior, senior, their name and address variations. Someone moved from Cleveland, where we don't know that they're in Cincinnati, so we'd throw them out as being out of precinct, wrong location. But then we'd say, oh, wait, we now know, because they wrote it in, they do live in Cincinnati now. So there are a lot of ways we capture these votes where the differences are because they play out on the facts on the grounds. But even if some... Wait, wait. So I started to ask the question, I said, is this only for date of birth, or for date of birth and address? Okay. The exception is only for date of birth. But in application, they do. If someone sees one, two, three, main, whether it says street or not, if there's some variation in how human beings apply a law, that doesn't mean the law is standardlessness for Bush v. Gore purposes. That happens in all sorts of things if the person, you know... The perfect is the enemy. Presumably, as I understood it, the printing your name rule is still okay, but you might print it correctly or not correctly. Right. With respect to the address, suppose a person's registered in Columbus and they give their address as New York. Do you then not count that because they've told us they've moved to New York? Well, we... Yeah, if they say, I live in New York, then they're in the wrong place. But what's more... But a lot of those could well... I mean, as far as we know, those could be captured in these numbers of wrong address.  But what's important is the way these promote catching people is if someone moved from Cleveland to Cincinnati, even if they moved in July and never updated the registration, previously, if they didn't write down their address, we'd have to throw them out because we'd find them in the database and see they're registered in Cleveland. But if they write, I live in Cincinnati, and that nudge, when you think about it in terms of for all voters, which is the rational basis test, not a subset of voters, when you look for all voters, we're bringing in more voters, we're getting more counted. That mean that you wouldn't count that vote, but you'd send them a note at their new address? Suppose the person's registered in Cleveland, he gives his address as Cincinnati, or New York. Although I suppose in New York you would say, we don't care. But whatever the new address is, do you not count the vote but send a letter saying, hey, if you want to register? No, we do. If they're now in Cincinnati and they write that down on the provisional ballot, that provisional ballot becomes a yes. But under... If all of a sudden we don't nudge that person to fill it out, and they're one of those people who doesn't fill it out without the word required leaning on them, then they lose that vote. And that's why our provisional numbers have come up. If they had no address, you wouldn't count it? No. No address, we don't. Before these laws, you would have. No, we... It's under the old law, since it was not required, it wasn't clear for some things as to absentee ballots, but for provisionals, I'm pretty sure, I don't want to misspeak, but I'm pretty sure if we have an address and we can confirm now, now we can count it. But if we don't have an address, we can't. We can't always find them. Sometimes, you know, whether we can or can't, changes on the fact patterns. But it has to be completely standardless to be a Bush v. Gore claim. I'm going to briefly mention the legal error. With respect, the statement that Judge Keith made that the judge found that there was a disparate impact from the challenge laws, that's not so at all. The district court openly says and adopts what their plaintiff's expert says, which is, after the challenge laws come online, there is no longer a provisional ballot rejection rate. And the thing about counties that are more minority, it went away in 2014. He made a guess that it might come back in 2016, a guess. But the facts... I'm beating a dead horse. We see, for instance, notices of appeal repeatedly where it says, this is an appeal from, and they fill in the date. Instead of putting the date of the appeal from order, they'll put today's date in there. And you know that's not the date that they appealed from. So they're saying, I gather from the briefs, that some of these things, the people just put in a required entry, they'll just put in today's date. It says date, and they don't read the word date of birth, they just read date and write today's date in there. If you get one of those, what I'm understanding you're saying is that if they've got the Social Security four digits correct, if they've got the address correct, if the name is clear, the name is printed, they still are not allowed to vote. But I gather they will be notified, and they have until seven days after the election. Right. They do. And if they... There's not notification... Is that... Am I reading it right? Is that what's required now? Because that's not saving any... I mean, the only rational basis for that is that it's a simple rule that we can apply. It's hard to imagine any rational basis for applying it in that case, because that's not going to incentivize them to comply, because they thought they did comply, they just wrote in the wrong thing. And it's not going to incentivize them to register, because they did register by hypothesis. All it's doing is, I don't know, having a clear rule, and the clear rule on the whole improves things, I guess. Well, first, uniformity is important. In fact, it's ironic, we get hit for being strict with the Bright Line Rule, then we get hit for having any variation, so we get sued coming and going. I understand that. But if you just take my particular example, it's irrational, isn't it? Well, no, Your Honor, because first, a lot of people leave it blank. And so as long as you believe some people who are leaving it blank are being nudged, and that is what everyone believed in what a number of senior people... It's the nudge to other people and consistency... Exactly. And it's the... You look at the system overall. And when you look at the system overall, if we are now salvaging more votes, both in the present and the future, because we can identify those movers, we can identify those senior or junior people, and we get more people registered. If you do the math, of the 2,600... So in my example, you've got more people with putting birth dates in there, I guess. But we only had 59 rejected in the whole state, Your Honor. If even some of those 2,600 non-registered votes turn into registered votes that get counted next time, then it's a net gain. And that's why these laws are best described on the road... By hypothesis, they were already registered. Well, councilman... No, Your Honor, of the 4,700 rejected last year, over 2,600 were simply not registered anywhere. And so by getting them to fill in the information so they get registered, we save those votes for the future. And that outweighs. And also... Just come... Bring your sentence to a conclusion, and then I think Judge Keith has a question. Yeah. Thank you, Judge Boggs. This is before us as to whether or not the district court's findings of fact were clearly erroneous. And, counsel, I don't want to be over-simplistic, but can you spell out in specificity where the district court was in error in this 12-day trial as we look at his findings of fact? With respect, Your Honor, we don't need to reach a single fact or challenge a single fact because he made legal errors. He made... The court made a legal error in looking at a subset of voters rather than all voters. The court made a legal error in ignoring the causation requirement because he acknowledged that these new laws did not cause any disparate impact. The only disparate impact testified to was in the past before these laws came in. These laws actually eliminated what had been a gap. It got better. And so those are legal errors. Let me ask you this on this point. Am I right? Judge Keith has laid out from the opinion the so-called jingles factors, but is that step two of the two-step framework that you don't get to that until you have a disparate impact? Correct. And more so it's step three. First, you identify an objective benchmark, which they don't do. You don't look at the old law, that's section five, not section two. The court said that on Holder v. Hall. The court said that. This court said you have to have an objective benchmark even outside the dilution context in Moore v. City of Detroit, binding precedent from this circuit as opposed to the vacated NAACP case, which is not precedent or to be cited. And this court also said- In the law, why isn't the old basis the benchmark versus the new basis? Because that's reserved for section five. And there's also no objective benchmark on why, for example, you should have three versus five fields or why you should have seven versus 10 days. There's nothing objective there. But even if you grant them a freebie on the objective benchmark requirement, the second step is to show that the challenge laws caused racial disparity as to whether the process overall is open. And here's where Dr. Hood testified and Dr. Timberlake did not disagree, that if you look at overall turnout rates, and the Seventh Circuit explained this well in Frank, different voters might use a different lane, the absentee by mail, the absentee in person, the early in person, or wait till election day. As long as in the end, everybody gets there. If you start looking at white people use mail-in more than black people use mail-in, so therefore we have to strike down all mailing. Of course not. And in the end, turnout rates are equal. And you certainly can't say for system as a whole that these 59 in the state, only eight in Cuyahoga County that year, somehow managed to be a breakdown of the system as a whole. And it's only at step three that you get to the jingles factors for totality of the circumstances. So they fail. They may be using two where you're going. Right. But whether you call it two or three, they don't show causation because, again, the district judge said that the only racial gap existed before these laws. So unless you have a time warp, these laws cannot have caused anything. It's only a predictive judgment about the future, and that doesn't hold up. But these laws are a guardrail, not a barrier. They keep people in the straight and narrow. Judge Rogers, did you have any further points? Judge Keith, did you have any further questions? No, thank you, Judge Rogers. Okay. If that's... We let you all run a little bit over. This is an important case. So are you satisfied now? Thank you, Your Honor. We ask that you reverse and affirm the parts we want. Thank you. All right. Thank you, counsel. That case will be submitted, and you may adjourn court.